# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-24792-CV-KING/TORRES

INTACT INSURANCE COMPANY, formerly
AXA PACIFIC INSURANCE COMPANY and
R&Q INSURANCE (MALTA) LTD., as
Subrogee of KEYSTONE AIR SERVICE LTD. and
KEVIN HEPP,

    Plaintiffs,

v.

THE PIPER AIRCRAFT CORPORATION
IRREVOCABLE TRUST,

    Defendant.
_____/

# REPORT AND RECOMMENDATION
# ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

This Matter is before the Court on Defendant's Motion for Judgment on the Pleadings Based on the General Aviation Revitalization Act of 1994, filed on March 15, 2017. [D.E. 80]. Plaintiffs filed a Response in Opposition to the Motion on March 28, 2017 [D.E. 95], and Defendant's Reply followed on April 3. [D.E. 107].[1] Upon a review of the Motion, the Reply and Response, and all relevant authorities, we hereby **RECOMMEND** that Defendant's Motion be **GRANTED**.

---

[1]    The Honorable Judge James Lawrence King referred all pretrial matters to the undersigned on March 29, 2017. [D.E. 101].

## I.   *FACTUAL BACKGROUND*

On November 6, 2000, a Piper PA-31-350 Chieftain aircraft built and sold in 1978 crashed while on approach to Runway 36 at Winnipeg International Airport in Manitoba, Canada. [D.E. 10, ¶¶ 20, 52, 54].[2] At the time of the incident, the plane was owned and operated by Keystone Air Service Ltd. ("Keystone"), a Canadian company with its principal place of business in the province of Manitoba. *Id.*, ¶ 9. There were seven passengers and one pilot aboard the aircraft at the time of the crash, all of whom resided in Canada. *Id.*, ¶ 2. In the years following the crash, six of the seven passengers brought lawsuits against Keystone, seeking damages for injuries suffered during the accident. *Id.*, ¶ 4. Plaintiffs, pursuant to an insurance policy that covered Keystone in connection with the operation of the aircraft, paid money to settle the passengers' lawsuits and reimburse Keystone for the loss of the airplane. *Id.*, ¶ 5, 164-169. According to the Amended Complaint, the total amount paid in connection with the loss of the aircraft totaled $595,753.23 in Canadian dollars. *Id.*, ¶ 74.

Before delving into Defendant's Motion and the relief requested therein, we should first examine the relevant history to determine how we arrived here. On July 1, 1991, Piper Aircraft Corporation ("Old Piper") filed a voluntary Chapter 11 Petition for Bankruptcy in the Southern District of Florida. *Id.*, ¶ 182. On July 11, 1995, Judge Robert A. Mark entered an order confirming the First Amended Joint

---

[2]   Plaintiff alleges the plane was manufactured in 1978. [D.E. 10, ¶ 20]. Defendant states that this is incorrect and that the plane was built by Old Piper in 1977. [D.E. 80, p. 2, n.3]. For purposes of this Order, the discrepancy does not matter.

Chapter 11 Plan of Reorganization of the Debtor, the Official Committee of Unsecured Creditors of Piper Aircraft Corporation, Newco PAC, Inc., Teledyne Industries, Inc. and Dimeling, Schreiber and Park. [D.E. 95-1; D.E. 10, ¶ 183] (hereinafter, the "Plan"). The Plan included provisions designed to protect New Piper from liability for accidents involving airplanes built by Old Piper. [D.E. 10, ¶ 188]. Among other things, the Plan created and funded the Piper Aircraft Corporation Irrevocable Trust (the "Trust").

The Trust required that any claim asserted against Old Piper must be considered a "Future Claim," defined as follows:

> [A]ll causes of action, rights and interests of all persons, whether known or unknown, born or unborn, who may, after the Confirmation Date, assert a claim against the Debtor, NEWCO or the Trust for personal injury, property damage, wrongful death, damages, contribution and/or indemnification, based in whole or in part upon events occurring or arising after the Confirmation Date (including, without limitation, claims based on the law of product liability, design defects and failure to warn). But only to the extent that liability exists because of aircraft or aircraft parts manufactured, sold, designed, distributed or supported by Old Piper or the Debtor prior to the Confirmation Date (including, without limitation, liability based on the law of product liability, design defects and failure to warn) unless and until such Future Claim becomes a Resolved Future Claim.

[*Id.*, ¶ 191; D.E. 95-2, p. 4]. Plaintiffs fall within this definition. In order for a Future Claimant to assert a claim against Old Piper, the claimant must comply with a Channeling Injunction established by both the Trust Agreement and the Plan. The Channeling Injunction required victims of post-confirmation crashes to assert claims against the Trust, and not New Piper. *See In re Piper Aircraft Corp.*, 2015 WL 5064067, *1 (S.D. Fla. Aug. 26, 2015). Judge Mark adopted the

3

Channeling Injunction in his reorganization plan. [D.E. 10, ¶ 188-89; D.E. 95-1, p. 20, ¶ 10].[3]

Plaintiffs filed this lawsuit against Defendant on December 31, 2015, after fulfilling all pre-suit requirements set forth by the Trust Agreement. [D.E. 10]. Plaintiffs seek contribution from the Trust for the money paid out on behalf of Keystone in order to satisfy the claims of the passengers injured in the crash. *Id*. Plaintiffs allege that Defendant's actions resulted in the crash because it failed to use reasonable care in the design, manufacture and distribution of the aircraft. [D.E. 10, ¶¶ 65 – 72]. According to the Amended Complaint, these alleged design flaws created a condition that allowed water to accumulate in one of the aircraft's inboard fuel tanks, which then froze, thereby restricting fuel flow into the engine and causing a complete loss of power immediately prior to the crash. *Id*. Plaintiffs argue that this makes Defendant partly or wholly liable for the Canadian passengers' injuries, and that the Trust should therefore be held responsible for the money the insurers paid to those passengers as a result of the accident. *Id*.

Defendant answered Plaintiffs' Amended Complaint on February 8, 2016. [D.E. 22]. Defendant's second affirmative defense stated that Plaintiffs' claims were barred by the General Aviation Revitalization Act ("GARA"), Pub. L. No. 103-298, 108 Stat. 1552 (codified at 49 U.S.C. § 40101). Defendant now moves this Court, under Rule 12(c) of the Federal Rules of Civil Procedure, to enter judgment on the

---

[3] The Trust Agreement also contains a choice-of-venue provision that requires any action brought against the Trust to be filed in the United States District Court for the Southern District of Florida. [D.E. 95-2, p. 2].

pleadings based on GARA's 18-year statute of repose. [D.E. 80]. Plaintiff opposed the Motion, and the matter is now fully briefed and ripe for adjudication.

## II.     LEGAL STANDARD

### A.     *Judgment on the Pleadings*

Under Federal Rule of Civil Procedure 12(c), judgment on the pleadings is proper when no issues of material fact exist and the movant is entitled to judgment as a matter of law. *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996). Put another way, a Rule 12(c) motion disposes of a case when the facts are not in dispute and the decision can turn on the competing pleadings. *Bank Ins. Co. v. Florida Residential Property and Casualty Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998). A court must accept all the facts in the complaint as true and view them in the light most favorable to the nonmoving party. *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (internal citation omitted). A judgment on the pleadings "only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed.). The pleadings that may be considered by the court include the complaint, answers, and any attached exhibits. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

### B.     *The General Aviation Revitalization Act of 1994*

GARA reads as follows:

5

> (a) IN GENERAL. – Except as provided in subsection (b), no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer, if the accident occurred –
>
>> (1) after the applicable limitation period beginning on –
>>
>>> (A) the date of delivery of the aircraft to its first purchaser or lessee, if delivered directly from the manufacturer; or
>>>
>>> (B) the date of first delivery of the aircraft to a person engaged in the business of selling or lease of such aircraft.
>>
>> (2) with respect to any new component, system, subassembly, or other part which replaced another component, system, subassembly, or other part originally in, or which was added to, the aircraft, and which is alleged to have caused such death, injury, or damage, after the applicable limitation period beginning on the date of completion of the replacement or addition.[4]

Pub. L. No. 103-298, 108 Stat. 1552, § 2(a)(1) (hereinafter, "49 U.S.C. § 40101 notes"). GARA defines the statutory "limitation period" as 18 years, *id.*, § 3(3), and Section 2(d) of the statute requires that the Act's 18-year statute of repose preempt any state law to the contrary. 49 U.S.C. § 40101 notes, § 2(d) ("This section supersedes any State law to the extent that such law permits a civil action described in subsection (a) to be brought after the applicable limitation period for such civil action established by subsection (a).").

---

[4] Subparagraph 2 is referred to as the "rolling" provision of GARA, which allows for the statute of repose to restart at the time when an original component or part is replaced with a new one. *Crouch v. Teledyne Cont. Motors, Inc.*, 833 F. Supp. 2d 1331, 1335 (S.D. Ala. 2011) (citing *Castillo v. Cessna Aircraft Co.*, 712 F. Supp. 2d 1306, 1315, n.2 (S.D. Fla. 2010)).

In passing GARA, "it is apparent that Congress was deeply concerned about the enormous product liability costs that our tort system had imposed upon manufacturers of general aviation aircraft." *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1084 (9th Cir. 2001). "[Congress] believed that manufacturers were being driven to the wall because of, among other things, the long tail of liability attached to those aircraft, which could be used for decades after they were first manufactured and sold." *Id.* (citing H.R. Rep. No. 103–525, pt. I, at 1–4 (1994)). GARA, therefore, serves as "a legal recognition that, after an extended period of time, a product has demonstrated its safety and quality, and that it is not reasonable to hold a manufacturer legally responsible for an accident or injury occurring after that much time has elapsed." *Altseimer v. Bell Helicopter Textron, Inc.*, 919 F. Supp. 340, 342 (E.D. Cal. 1996).

### III.   ANALYSIS

We find that GARA's 18-year statute of repose bars Plaintiffs' claims against the Trust. The statute applies to Plaintiffs' underlying suit because it is a "civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft." 49 U.S.C. § 40101 notes, § 2(a)(1).[5] Likewise, the timeline of events provided in Plaintiffs' operative pleading

---

[5]   GARA defines a "general aviation aircraft" as "any aircraft for which a type certificate or an airworthiness certificate has been issued by the Administrator of the Federal Aviation Administration, which, at the time such certificate was originally issued, had a maximum seating capacity of fewer than 20 passengers, and which was not, at the time of the accident, engaged in scheduled passenger-carrying operations as defined under regulations in effect under the Federal Aviation Act of 1958." 49 U.S.C. § 40101 notes, § 2(a)(c) (internal citations omitted)

7

establish that the statute's 18-year statute of repose is triggered under the claim, as the Amended Complaint states that Old Piper manufactured the airplane at issue in 1978, and the crash occurred approximately 22 years later on November 6, 2000. [D.E. 10, ¶¶ 1, 20]. Based on these undisputed facts, standing alone, GARA's 18-year statute of repose would bar the claim as a matter of law.

Plaintiffs do not challenge these facts, nor do they claim that GARA's rolling provisions apply. Instead, Plaintiffs advance two main arguments to argue why GARA's statute of repose should not bar the claim: (1) but for the Trust Agreement's channeling injunction, Plaintiffs' lawsuit would have been filed in Canada, beyond the reach of GARA's statutory provisions; and (2) GARA's application in this matter would be inequitable, unfair and violate Plaintiffs' constitutional rights.  As discussed in more detail below, each argument fails.

### A.

Plaintiffs first attack the Channeling Injunction and the Trust Agreement's requirement that Plaintiffs file suit in the Southern District of Florida, claiming that the Trust's jurisdictional provisions are somehow unfair or underhanded. We disagree. In our view, the jurisdictional requirement found within the Trust Agreement merely serves as a *de facto* forum selection clause, which are deemed presumptively valid by the United States Supreme Court. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). In order to overcome the forum selection contained within the Trust Agreement, Plaintiffs would need to make a strong showing that enforcement would be unreasonable or unjust, or that the

clause had in some way been procured through fraud or overreaching. *Solymar Invest., Ltd. v. Banco Santander, S.A.*, 2011 WL 1790116, *13 (S.D. Fla. Mar. 14, 2011). Plaintiffs have offered no such support, instead relying upon conclusory statements that the requirement to bring suit in this forum is in some way "inequitable." Such generalized statements, without more, are insufficient.

As Plaintiffs concede in the Response, channeling junctions are an accepted tool used by bankruptcy courts in this District and throughout the federal court system. [D.E. 95, p. 5]; *see also In re Piper Aircraft Corp.*, 2015 WL 5064067, *4 ("The Trust and the channeling injunction were drafted to protect New Piper from liability arising from post-confirmation crashes of planes built by Old Piper where liability is based on Old Piper's wrongful acts."); *Evans Products Co.*, 2009 WL 2448145, *8 (S.D. Fla. Aug. 6, 2009) ("Congress has since codified the trust/channeling injunction mechanism [for asbestos litigants]…in section 524(g) of the Bankruptcy Code, and it has become the established method for debtors with significant asbestos liability to seek and attain reorganization."). Despite this general acceptance, Plaintiffs argue that the application of the Channeling Injunction under these circumstances would be inequitable and unfair because it requires suits against Old Piper to be brought in the United States – where GARA applies – rather than Plaintiffs preferred venue in Canada, where the Act's statute of repose would have no effect. [D.E. 95, p. 11]. If not for the Channeling Injunction's "forced jurisdiction provisions," argue Plaintiffs, the contribution claim they now assert would be beyond the reach of GARA's statutory mandate. *Id.*, p. 7.

9

This argument is fatally flawed. Plaintiffs' arguable "jurisdictional disadvantage" – and their wish to litigate the matter as if it were taking place in a Canadian court – ignores a single, critical fact: if not for the Trust Agreement (and, by incorporation, the Channeling Injunction), it would be impossible for Plaintiffs to file *any* lawsuit against Old Piper, whether in Canada or some other foreign jurisdiction. The Reorganization Plan approved by Judge Mark in 1995 allowed for Plaintiffs to initiate lawsuits against Old Piper, which would have been impossible absent the Trust Agreement. The arguments advanced in the Response, therefore, attack the very arrangement that actually preserved Plaintiffs' ability to seek judicial recourse against Old Piper in the first place.

Plaintiffs' argument also ignores the fact that all Future Claimants, of which Plaintiffs are a member, were represented by counsel in the Old Piper bankruptcy proceedings and agreed to the terms of the reorganization plan and the Trust Agreement. Under these circumstances, Plaintiffs offer no other justification for undoing the Trust arrangement beyond the fact that they do not like the outcome that results from its application. *See Covert v. LVNV Funding, LLC*, 779 F.3d 242, 248-49 (4th Cir. 2015) ("Once a bankruptcy plan is confirmed, its terms are not subject to collateral attack through suits that raise claims inconsistent with the confirmed plan…Moreover, allowing [ ] post-confirmation collateral attacks on a bankruptcy plan's terms would destroy the finality that bankruptcy confirmation is intended to provide.") (quoting *Adair v. Sherman*, 230 F.3d 890, 894-95 (7th Cir.

10

2000)); *In re Piper*, 2015 WL 5064067 at *1 ("The Trust and channeling injunction have worked effectively for twenty years without this Court's intervention.").

Further, even if we were to determine that Canadian law should govern this matter – which Plaintiffs urge us to do – GARA's statute of repose would still bar Plaintiffs' suit. The Supremacy Clause of the United States Constitution states that "the Laws of the United States…made, under the Authority of the United States, shall be the supreme Law of the Land." U.S. CONST. art. VI, cl. 2. As the Supreme Court cautioned in its landmark *Erie Railroad* case, a District Court must apply the law of the state "[e]xcept in matters governed by the Federal Constitution or by acts of Congress." *Erie R. Co. v. Tompkins*, 304 U.S. 64, 77 (1938). Thus imposition of limitations periods on causes of action in federal court fall within the States' powers, but only if not pre-empted by Congress. *E.g., Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 161 (1987) ("federal courts [shall] apply state law unless federal law otherwise "requires or provides . . . by affirmative congressional action."). Here, GARA's statutory language constitutes unequivocal and affirmative congressional action: "*no civil actions for damages* for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft *may be brought against the manufacturer of the aircraft*…if the accident occurred after the [18-year] limitation period." 49 U.S.C. § 40101 notes, § 2(a) (emphasis added); *see also* H.R.Rep. No. 103–525, pt. 2, at 7 (1994) (In enacting GARA, Congress "voted to permit, in this exceptional instance, a very limited Federal preemption of State law…In cases where the statute of repose has

11

not expired, State law will continue to govern fully, unfettered by Federal interference.").

As such, Congress enacted a law that expressly prohibits the filing of a lawsuit against *any* airplane manufacturer if the 18-year statute of repose expires prior to the initiation of the lawsuit, even in the face of conflicting state law. As a District Court sitting in diversity, we must apply the Act's provisions here pursuant to the Supremacy Clause, regardless of whether or not the conflicting "state" law stems from another country's enactment. This decision is consistent with those of several other courts that applied GARA to lawsuits arising from accidents occurring on foreign soil. *See Blazevska v. Raytheon Aircraft Co.*, 522 F.3d 948 (9th Cir. 2008) (applying GARA's statute of repose to plane that crashed in Bosnia); *Bain ex rel. Bain v. Honeywell Intern., Inc.*, 167 F. Supp. 2d 932 (E.D. Tex. 2001) (GARA applicable to helicopter accident taking place in British Colombia); *Alter v. Bell Helicopter Textron*, 944 F. Supp. 531 (S.D. Tex. 1996) (GARA applicable to claim stemming from helicopter crash in Israel); *cf. Michaud v. Fairchild Aircraft Inc.*, 2001 WL 34083885, *4 (Del. Super. Ct. Nov. 16, 2011) (performing analysis of GARA's rolling provisions for accident occurring in Quebec); *Estate of Glover v. Am. Res. Corp.*, 1996 WL 33484136 (Cal. Super. 1996) (accident taking place in Argentina).

The Ninth Circuit's decision in *Blazevska* provides meaningful guidance on the issues raised in Plaintiffs' Response and with regard to the accident's occurrence in Canada. In *Blazevska*, Macedonian survivors of passengers killed in an airplane

crash that occurred in Bosnia brought a wrongful death action against the aircraft's manufacturer. *Blazevska*, 522 F.3d at 950. The district court granted summary judgment for the defendants, holding that GARA's eighteen-year statute of repose barred plaintiff's action. *Id*. Plaintiffs appealed, arguing that the presumption against extraterritoriality made GARA inapplicable to the individuals' claims because the crash took place outside of the United States and that the Complaint only alleged causes of action under Macedonian law. *Id*. The Ninth Circuit disagreed and affirmed the district court's decision, stating:

> Simply because a case's factual background involves some conduct occurring abroad does not mean that every statute governing the matter is subject to the presumption against extraterritoriality; a court must first inquire into whether applying a statute implicates any issue of extraterritoriality. This requires considering the conduct the statute seeks to regulate…Appellants contend that the conduct at issue in this case is a tort injury suffered in Macedonia. Under their logic, the place where the tort claim arises determines whether the various federal statutes governing a case are being applied extraterritorially.

*Id*., at 952 (internal citations omitted).  The Ninth Circuit found that GARA should apply despite the accident occurring in another country:

> Here, appellants have failed to show that an application of GARA would impermissibly regulate conduct that has occurred abroad. GARA only regulates the ability of a party to seek compensation from general aviation airplane manufacturers in American courts. *See* GARA § 2(a). It is not a statute governing the substantive standards involved in tort claims. GARA merely eliminates the power of any party to bring a suit for damages against a general aviation aircraft manufacturer, in a U.S. federal or state court, after the limitation period. The only conduct it could arguably be said to regulate is the ability of a party to initiate an action for damages against a manufacturer in American courts – an entirely domestic endeavor…Accordingly, the presumption against extraterritoriality simply is not implicated by GARA's application.

*Id*. at 953.

We find the reasoning in *Blazevska* sound and reach the same conclusion as the Ninth Circuit. Here, Plaintiffs have brought suit against the Trust in a United States District Court. In passing GARA, whose reach only extends to those suits filed within the United States, Congress eliminated a party's ability to seek damages for actions occurring more than 18 years prior. The statute does not touch upon the substantive or procedural standards to be applied in such suits, nor does it require the application of U.S. law; it merely regulates the timeframe in which such actions must be filed, even if the accident that results in initiation of the suit occurs outside this country's borders. We must follow Congress' guidance under these circumstances. *See id*. at 955 ("Congress passed a statute regulating the ability of a party to bring a suit against a general aviation aircraft manufacturer in American courts. Following these cases, GARA itself does not regulate any conduct that occurred abroad, so the presumption [against extraterritoriality] does not apply.").

As an additional consideration, Plaintiffs' own pleadings significantly weaken their argument that Canadian law should govern the matter. A cursory examination of the actual allegations contained within the Amended Complaint also establishes that the alleged negligent conduct asserted by Plaintiffs – the design, manufacture and distribution of the subject aircraft by Old Piper – occurred entirely within the United States. In our view, the place of the alleged negligent conduct, and the entire basis for which Plaintiffs seek to hold Old Piper responsible for contribution, is a matter governed by the law of the United States, *regardless* of where the actual accident took place. To find otherwise would lead to inconsistent,

14

arbitrary application of the law. *See Alter*, 944 F. Supp. at 541 ("GARA, in contrast, eliminates certain claims against aircraft and component manufacturers. Plaintiff has not cited to any authority which holds that a federal statute barring enforcement of claims in courts of the United States bars only claims arising within the United States. Plaintiff's interpretation of GARA would have the anomalous effect of preventing litigants from bringing an action in the United States for an accident occurring in the United States while allowing litigants to bring the same action in the United States if the accident occurred abroad.").

In any event, we are bound to apply Congress's express directive in GARA whether or not Florida or Manitoban law ultimately applies to the merits of the claim, because Congressional authority to impose a preemptive statute of repose is firmly established in our jurisprudence. We have no choice but to apply it here.

### *B.*

As a final, "hail mary" attempt to avoid GARA's Congressionally-mandated reach, Plaintiffs argue that application of the statutory bar would violate the United States Constitution. [D.E. 95, p. 14]. Specifically, Plaintiffs contend that dismissal of their lawsuit denies "their right of access to the courts" in violation of the First Amendment's Petition Clause. *Id*. Plaintiffs also argue that this Court's dismissal of the claim would violate their Fifth Amendment Due Process rights.

These arguments ring hollow. A party cannot defeat pre-trial dismissal of a lawsuit merely because he or she is unhappy with the accompanying result, and constitutional rights have no bearing on whether a court determines that a

particular suit is time-barred under the law that applies to that case. Tellingly, Plaintiffs do not cite to any authority that would support this contention. They simply imagine a perceived constitutional injury as a shield against enforcement of Congress's authority under Article I of that same Constitution to regulate interstate commerce – in this case the general civil aviation industry.

Plaintiffs' constitutional theory also forgets that statutes of repose have been upheld and applied in many different areas of the law, to foreign as well as domestic parties alike. As the Supreme Court recognized just this past week, "statutes of repose are enacted to give more explicit and certain protection to defendants. These statutes 'effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time.' " *California Pub. Employees' Ret. Sys. v. ANZ Sec., Inc.,* No. 16-373, 2017 WL 2722415, at *7 (U.S. June 26, 2017) (quoting *CTS Corp. v. Waldburger,* 134 S.Ct. 2175, 2183 (2014)). That is why, unlike statutes of limitation, expressly mandated statutes of repose cannot be tolled due to "fairness" or "equitable" claims (such as estoppel). *See, e.g., Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 363 (1991) ("Because the purpose of the 3–year [repose] limitation is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period."); *California Pub. Employees' Ret. Sys.,* 2017 WL 2722415, at *9 ("The purpose and effect of a statute of repose . . . is to override customary tolling rules arising from the equitable powers of courts. . . . The unqualified nature of that determination supersedes the courts' residual authority and forecloses the extension of the statutory period based on equitable principles.").

16

Hence, whether in the case of Canadian insurance companies like these Plaintiffs suing a Florida-based trust over a plane crash, or in the case of a California pension fund suing New York securities firms over the Lehman Brothers crash,[6] or in the case of Oregon investors suing a New Jersey law firm over a computer firm's crash,[7] or in the case of Florida investors suing New York investment houses over the Madoff Ponzi-scheme crash,[8] otherwise meritorious claims are/were barred under preemptive federal statutes of repose. In each of these cases, the Supreme Court and our circuit's appellate court reaffirmed the principle that a valid statute of repose effectively negates the existence of any further civil liability as to that particular defendant. Claims of fairness or due process by legitimately injured parties, which undoubtedly were raised in those cases just as they are here, were not enough to undermine the legal effect of far shorter statutes of repose that those defendants were also constitutionally entitled

---

[6]   *California Pub. Employees' Ret. Sys.,* 2017 WL 2722415, at *14 ("The final analysis, then, is straightforward. The 3–year time bar in § 13 of the Securities Act is a statute of repose. Its purpose and design are to protect defendants against future liability. The statute displaces the traditional power of courts to modify statutory time limits in the name of equity. . . . Petitioner's untimely filing of its individual action is ground for dismissal.").

[7]   *Lampf,* 501 U.S. at 364 (holding that defendants entitled to summary judgment where "there is no dispute that the earliest of [plaintiffs'] complaints was filed more than three years after [defendant's] alleged misrepresentations, [plaintiffs'] claims were untimely.").

[8]   *Dusek v. JPMorgan Chase & Co.,* 832 F.3d 1243, 1249 (11th Cir. 2016) (affirming dismissal under five-year statute of repose) ("Appellants' right to bring the Section 20(a) claim expired, at the latest, on December 11, 2013, five years after Madoff was arrested and BLMIS was closed. . . . They did not file their claim until March 28, 2014. Accordingly, their claims are time-barred and were properly dismissed.").

to invoke.  We too are bound to apply this federal statute of repose just like any other.  *See Alexander Proudfoot Co. v. Thayer*, 877 F.2d 912, 917 (11th Cir. 1989) ("If Congress intended to reach the issue before the District Court, and if it enacted its intention into law in a matter that abides by the Constitution, that is the end of the matter.") (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27 (1988)).

Yet these insurers' last-ditch arguments – taken to their logical extreme – would have the Court ignore this Congressional mandate, or any other federally enacted Rule of Procedure for that matter, to achieve their ultimate aim of monetary recovery.  Plaintiffs apparently envision that their pecuniary interests should always trump a federal court's ability to dismiss a case prior to trial as a matter of binding federal law. Plaintiff's theory – that anything short of a trial on the merits violates their due process rights as litigants in an American federal court – would certainly come as a surprise to, for instance, the Congress that adopted Rules 12, 52, 54 and 56 the Federal Rules of Civil Procedure.  As litigants before this Court, Plaintiffs are subject to those same rules and do not suffer some quasi-constitutional injury when those rules are fairly and equally applied.  Plaintiffs' position here is thus quite untenable because "the limitless nature of [their] argument . . . reveals its implausibility." *California Pub. Employees' Ret. Sys.,* 2017 WL 2722415, at *13.

## IV.   CONCLUSION

In sum, we find that no issues of material fact exist and Defendant is entitled to judgment as a matter of law based on GARA's 18-year statute of repose.

Accordingly, we hereby **RECOMMEND** that Defendant's Motion for Judgment on the Pleadings [D.E. 80] be **GRANTED**, and that Final Judgment should be entered in Defendant's favor.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 29th day of June, 2017.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge